IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.                                              CRIMINAL NO.  1:14cr82HSO-RHW

KAMRAN PAHLAVAN

**GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND MOTION TO EXCLUDE PROFFERRED TESTIMONY**

The United States hereby files its consolidated response to Defendant Pahlavan's Motion to Dismiss [28] and Motion to Exclude Proffered Testimony [27]. Defendant seeks dismissal of the indictment and/or suppression of his statements. As a basis for both motions, defendant alleges that the government breached the terms of a proffer agreement.

**I.     FACTUAL BACKGROUND**

The undersigned Assistant U.S. Attorney was assigned this case in March 2015, after the AUSA who had handled the investigation and grand jury presentation resigned from the U.S. Attorney's Office on February 27, 2015. The undersigned has no personal knowledge of any facts surrounding the proffer agreement. However, from conversations with the former AUSA and the FBI case agent, the government understands that the following events occurred on the dates indicated:

- *November 16, 2011*: defendant Pahlavan voluntarily met with FBI agents at their office and was interviewed without an attorney or proffer letter. Defendant admitted during this interview that he had accepted gifts and favors from Sean Anthony and that he understood those gifts and favors could be considered bribes. He also admitted that two vehicles had been purchased for him by Anthony, including a 2005 Infinity G35 sedan. He admitted that Anthony had given him a cell phone and Saints football tickets. Defendant further stated that he realized accepting those things was wrong and improper. He also said that he had intended to pay Anthony back for the Infiniti.

- *June 18, 2012*: proffer letter signed by defendant, his attorney, Chet Nicolson, and AUSA Mike Hurst (*see* ECF # 28-1);

- *June 18, 2012*: defendant was interviewed by investigating agents, pursuant to a proffer letter; also present were AUSA Hurst and defendant's attorneys. During this interview, defendant made materially false statements concerning the purchase of certain cars, although the government would not establish the falsity of the statements until much later;

- *June 2012 to January 2013*: Pahlavan makes numerous undercover recordings with Sean Anthony at the direction of the FBI;

- *October 4, 2012*: Pahlavan was interviewed by investigating agents from IRS-CI, FBI and HUD-OIG, with no attorneys present and makes additional false statements concerning the purchase of certain vehicles;

- *February 6, 2013:* investigating agents contact Sean Anthony for the first time in connection with the public corruption investigation;

- *February–March 2014*: Former AUSA Hurst contacts defense counsel Chet Nicholson and advises him that government intends to prosecute Pahlavan and makes plea offer; sometime thereafter defense counsel advises the government that the defendant does not intend to accept any plea offer;

- *December 9, 2014*: Grand jury returns indictment against defendant.

**ARGUMENT**

**I.     PROFFER AGREEMENTS**

One of the most basic tools a federal prosecutor has for evaluating a criminal subject's potential for cooperation is the proffer agreement, otherwise known as the "queen for a day" or "limited immunity" agreement. One court explained that:

> A "proffer agreement" is generally understood to be an agreement between a defendant and the government in a criminal case that sets forth the terms under which the defendant will provide information to the government during an interview, commonly referred to as a proffer session. The proffer agreement defines the obligations of the parties and is intended to protect the defendant against the use of his or her statements, particularly in those situations in which the defendant has revealed incriminating information and the proffer session does not mature into a plea agreement or other form of cooperation agreement.

*United States v. Lopez*, 219 F.3d 343, 345 (4th Cir. 2000).

Because proffer agreements are legal agreements between two parties, courts have almost uniformly turned to the law of contracts when addressing legal issues that arise from them. "Proffer agreements are contracts, and their 'terms must be read to give effect to the parties intent.'" *United States v. Raisley*, 466 F. App'x 125, 130 (3rd Cir. 2012) (quoting *United States v. Hardwick*, 544 F.3d 565, 570 (3rd Cir. 2008)), *See also United States v. Yellow*, 627 F.3d 706, 708 (8th Cir. 2010) (finding that plea agreements are contractual and therefore should be interpreted by "general contractual principles") (quoting *United States v. Thompson*, 403 F.3d 1037, 1039 (8th Cir. 2005)); *United States v. Castaneda*, 162 F.3d 832, 835 (5th Cir. 1998); *United States v. Chiu*, 109 F.3d 624, 625 (9th Cir. 1997); *United States v. Thompson*, 25 F.3d 1558, 1562 (11th Cir. 1994) ("In determining the extent of immunity afforded a defendant under an [informal] immunity agreement, a court should apply basic principles of contract law.").

Because a defendant's immunity originates from the proffer agreement and not from a formal statutory grant of immunity, courts look to the text of the agreement to determine the scope of immunity. *United States v. Hill*, 643 F.3d 807, 875 (11th Cir. 2011) *see also Taylor v. Singletary*, 148 F.3d 1276, 1284 (11th Cir. 1998) (concluding that a formal grant of immunity under 18 U.S.C. §§ 6001-6003 gives a defendant more protection than an informal immunity agreement). To ensure that the government retains some ability to use a defendant's proffer statements against him in case of a breach of the agreement or other break down, a defendant must waive his rights under Federal Rule of Evidence 410, which provides in relevant part: "[E]vidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions … a statement made during plea discussion with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea." *United States v. Roberts*, 660 F.3d 149, 157 (2nd Cir. 2011); *see*

*also* Fed. R. Crim. P. 11(f) ("The admissibility or inadmissibility of ... a plea discussion, and any related statement is governed by Federal Rules of Evidence 410."); *United States v. Herman*, 544 F.2d 791, 797 (5th Cir. 1977) ("Statements are inadmissible if made at any point during a discussion in which the defendant seeks to obtain concessions from the government in return for a plea.").

The Second Circuit has explicitly held that "[s]tatements made by defendants in proffer sessions are covered by Rule 410." *United States v. Barrow*, 400 F.3d 109, 116 (2nd Cir. 2005) (citing *United States v. Velez*, 354 F.3d 190, 194 (2nd Cir. 2004)). The Supreme Court has concluded that because Rule 410 serves as an exception to "the general principle that all relevant evidence is admissible at trial," it is narrowly interpreted by courts and can be waived by the defendant. *United States v. Mezzanatto*, 513 U.S. 196, 205 (1995) (holding that while the rule holds that statements made in plea discussions are inadmissible, this right can be waived or even offered by the defendant himself if it would be advantageous). *See Roberts*, 660 F.3d at 157 (recognizing that the protections of the rule can be waived by a defendant); *United States v. Mitchell*, 633 F.3d 997, 1000-06 (10th Cir. 2011) (reiterating that a defendant can waive Rule 410 as long as it is voluntary and knowingly); *United States v. Sylvester*, 583 F.3d 285, 289 (5th Cir. 2009) (finding "no indication of congressional disfavor towards waiver" of Rule 410 rights).

II.     DEFENDANT PAHLAVAN'S PROFFER LETTER

The "proffer letter" entered into between defendant and the government in the instant case granted the defendant use immunity for any completely truthful statements he made during the proffer and assured him that such statements would not be used against him during the "government's case in chief." The letter was not a non-prosecution letter. To the contrary, the proffer letter indicates that prosecution of defendant will be sought: "The government is

4

interested in pursuing this matter and will consider a proffer of information in formulating an appropriate resolution of this case as it relates to your client." ECF #28-1, at 1 (beginning paragraph and paragraphs nine and ten which discuss plea offers and plea agreements).

The Fifth Circuit has held that non-prosecution letters, plea agreements and the like are interpreted in accordance with general principles of contract law. *Castaneda*, 162 F.3d at 835. As the court has recognized: "Where a defendant has fulfilled his obligations under the agreement, the government must perform its reciprocal promise. *In the alternative, a material breach on the part of the defendant absolves the government of any further obligation.* Due process concerns preclude the government from unilaterally nullifying the agreements where, as here, the government believes the defendant is in breach. Prior to prosecuting the defendant, the government must prove to the court by a preponderance of the evidence that the defendant breached the agreement in a manner sufficiently material to warrant recission."
*United States v. Cantu,* 185 F.3d 298, 302 (5th Cir. 1999)(internal citations omitted)(emphasis supplied).

Defendant Pahlavan alleges that the government materially breached the proffer letter by using his statements to indict him. He argues that the indictment should be dismissed for this breach, but if the case goes to trial, he seeks suppression of his statements made during the proffer. A material breach "deprives the non-breaching party of the benefit of its bargain. As a corollary, 'if a party's nonperformance ... is innocent, does not thwart the purpose of the bargain, and is wholly dwarfed by that party's performance, the breaching party has substantially performed under the contract, and the non-breaching party is not entitled to rescission.'" *United States v. Davis*, 393 F.3d 540, 546-47 (5th Cir. 2004)(internal citations omitted), quoting *Castaneda,* 162 F.3d at 837.

5

In *Davis*, the defendant entered into a plea agreement with the government in which he agreed to plead guilty to one count of bribery and "provide complete and truthful information and testimony." 393 F.3d at 545. The agreement also provided that failure to do so could render the agreement unenforceable and result in prosecution and use of Davis's statements against him. *Id*. The district court found, and the 5th Circuit affirmed, that Davis's failure to tell the investigating agents about checks involved in a bribery scheme amounted to a material breach of the plea agreement because his failure was not innocent and his "failure to disclose information about the checks directly contravened the purpose of the plea agreement, which was to investigate the role of Samuel and others in the bribery scheme.." *Id.* at 547. As the court said: "Certainly, information regarding a $30,000 bribe would be very valuable to the government in its investigation. . . Davis's breach is not wholly dwarfed by the information he provided. The information that Davis did provide severely and inaccurately reduced his and Samuel's apparent involvement in illegal bribery transactions." *Id*.

Likewise, in the instant case, defendant Pahlavan's lies to the agents concerning Sean Anthony's involvement in purchasing two vehicles for Pahlavan inaccurately minimized his and Anthony's involvement in the bribery scheme. The lies told by Pahlavan prevented the government from receiving the benefit of its bargain. The government was able to prosecute Anthony, in large part because of Pahlavan's cooperation, "[h]owever, the government spent [many] hours in its investigation which could have been avoided" if Pahlavan had provided the complete and true facts about the vehicle purchases. Thus, just as in *Davis*, "the government did not receive the honest, truthful disclosure of information that it had bargained for." 393 F.3d at 547. Accordingly, the motions to dismiss and exclude should be denied.

Respectfully submitted, this the 17th day of June, 2015.

                              GREGORY K. DAVIS
                              UNITED STATES ATTORNEY

By:    *s/Ruth R. Morgan*
        Ruth R. Morgan
        Assistant U.S. Attorney
        MS Bar # 1996
        1575 20th Avenue
        Gulfport, MS 39501
        (228) 563-1560 Fax: (228) 563-1571
        Ruth.Morgan@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2015, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

        *s/ Ruth R. Morgan*
Ruth R. Morgan
Assistant U.S. Attorney